**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| UNITED STATES OF AMERICA | 3:07-cr-088-RRB-JDR |
| Plaintiff, | |
| vs. | **RECOMMENDATION REGARDING MOTION TO VACATE** (§ **2255)** |
| STEVEN LANDERS, | |
| Defendant. | (Docket Nos. 331/344) |

Defendant **Steven Landers** filed an Amended 2255 Motion at Docket 344, supplementing his original Pro Se § 2255 Motion to Vacate at Docket 331. The Amended Motion to Vacate was filed as a supplement to the original Motion.   Landers asks that his conviction be set aside and his case dismissed and that he be released from supervision by the Probation Office.  The government filed an Answer to the Amended/Supplemental to the § 2255 Motion and

Supplement at Docket 380.  An evidentiary hearing on the 2255 habeas motion was conducted in two stages.  First, Mr. Weidner testified at an evidentiary hearing on May 28, 2013.  This was followed by the testimony of Mr. Vroman taken at an evidentiary hearing on June 5, 2013.   Landers filed a Supplemental Brief at Docket 426 and the government filed their Supplemental Brief at Docket 428.  For reasons stated below, the magistrate judge recommends the Motion to Vacate be DENIED.

## Issues Raised

The initial Motion to Vacate asserts a Fifth Amendment violation on the ground that the government knowingly allowed a key witness (Jeffrey Vroman) to commit perjury at the suppression hearing and at trial.  Landers argues that the prosecutor realized that the Chugach Electric Company (CEA) had no signed service agreement with him for 8220 Clarks Road to trigger the CEA Tariff or allow the CEA agent access to the Clarks Road address.  He contends that the prosecutor and Mr. Vroman committed fraud on the court when AUSA Fuller questioned Vroman at the evidentiary hearing, asking him if CEA had a signed service agreement with Landers and Vroman answered in the affirmative, knowing that this was false or misleading testimony.  The petition also asserts ineffective assistance of counsel on the ground that Phillip Paul Weidner, retained counsel for Landers failed to challenge the authenticity and relevance of this fraudulent testimony and Mr. Vroman's alleged perjured testimony.

Landers faults his attorney for failing to raise as a legal issue a claim that Anchorage Police officers allowed CEA employees to tamper with "critical exculpatory evidence" after a search warrant was served. He claims that Mr. Vroman was trying to return to the property to make it look like power theft and in doing so tampered with physical evidence.

The § 2255 Motion contends that the magistrate judge made an incorrect assessment of facts relating to the service agreement. The Motion alleges that Mr. Weidner did not fully understand the "power theft issue" because he lacked a background in the field. Landers disputes that Vroman had to search past the meter on his property to determine whether there was any power theft. He argues that his attorney should have called an expert witness to refute this fact. Landers argues that if his attorney had successfully challenged Vroman's testimony then the evidence might have been suppressed. Landers maintains that CEA lacked the proper legal agreement to permit them entry onto his property.

Landers also faults his attorney for failing to contest the criminal forfeiture count. However, he offers no legal arguments or valid defense to the forfeiture that a reasonable attorney should have made.[1]

---

[1] According to the Motion the government's lien on the defendant's real property was released in February 2008.

Finally, Landers argues that he was improperly sentenced on the number of marijuana plants not the actual quantity of marijuana. He faults his attorney for failing to argue that his sentence was excessive. The sentence fell within the advisory federal sentencing guidelines.

The government and Mr. Weidner argue the significance of United States v. Cleaveland, 38 F.3d 1092, 1094 (9th Cir. 1995) regarding the test to determine whether the power company upon entering the Clarks Road property was furthering its own interest with the legitimate, independent motivation of investigating a possible power theft or acting as an agent of the government when performing their entry and search. One of the factual issues in this case was whether CEA exceeded its authority in going onto the Clarks Road property.

Landers argues that Mr. Weidner should have pointed out to the court the "potential deception in the introduction of the service agreement for a different address during Mr. Vroman's testimony." Docket 344, p.7. Landers notes that Mr. Vroman testified that the tariff would not authorize a warrantless intrusion on Landers property by CEA absent an active service agreement. Landers claims that Weidner should have argued that the failure of CEA to produce a service agreement for the Clarks Road address was fatal to the government's opposition to the motions to suppress. Key to this argument is the defendant's claim that Mr. Vroman gave false testimony at the suppression hearing and/or trial regarding the service

agreement, the tariff, and CEA's right of entry onto property which utilizes electrical power furnished by CEA.

## Procedural History

Steven Landers was charged in an Indictment with (Count 1) Manufacture of Marijuana in violation of 21 U.S.C. § 841(a)(1) & (b)(B) and (Count 2) Criminal Forfeiture in violation of U.S.C. § 853(a)(1) and (a)(2). He pleaded not guilty and the first trial by jury resulted in a hung jury. Docket 162. In a subsequent bench trial he was found guilty of manufacturing a hundred or more marijuana plants. Mr. Landers did not testify at either trial, and he appealed the conviction and judgment to the Ninth Circuit Court of Appeals. The judgment was affirmed on September 16, 2009. Landers filed a Petition for Certiorari on January 27, 2010 and this Petition was denied. A motion to vacate was filed on March 8, 2011. Mr. Landers was represented by Philip P. Weidner, Esq, at pretrial, trial and sentencing stages of the case.

Mr. Weidner filed several pretrial motions to suppress and motions to dismiss. *See* Dockets 27, 28, 29, 30 and 31. These motions asserted *inter alia* that Chugach Electric Association acted beyond its authority when they inspected Mr. Landers property. Landers also contends CEA acted unlawfully in conjunction with the Anchorage Police in their warrantless entry. He challenged the subsequent searches based on the fruits of the original warrantless intrusion.

At the suppression hearing an application for service for Mr. Landers at 14800 Zircon Circle in Anchorage was introduced as Exhibit 23. The date of that Agreement was 1988, many years earlier than the entry at the Clarks Road residence at issue in this case.

The magistrate judge's Recommendation addressing the Motions to Suppress (Docket 84), found that CEA had a consumer agreement for power with Steven Landers for 8220 Clarks Road, that the electric company was entitled to enter Mr. Landers' property according to the Tariff (Exhibit 22), and that CEA acted on their own and not as agents of the Anchorage Police. Landers argues that the magistrate judge's Recommendation and subsequent court findings were based on "false evidence."

## Discussion

### A.  <u>Strickland</u> Standard

Landers argues that his attorney fell below the standards set out in <u>Strickland v. Washington</u>, 466 U.S. 668, 690 (1984). Strickland establishes a two prong test for determining whether counsel has rendered constitutionally ineffective assistance of counsel. Essentially the defendant must show that his attorney's representation was deficient and that this deficiency was prejudicial. Id. at 693. The burden is upon the defendant to establish that his attorney's performance was "so

deficient that it fell below an objective standard of reasonableness." <u>Silva v. Woodford</u>, 279 F.3d 825, 836 (9th Cir. 2002).

<u>Strickland</u> teaches that judicial scrutiny of a counsel's performance is highly deferential and the court should make every effort to eliminate the distorting effect of hindsight and to evaluate the conduct from counsel's perspective at the time. 466 U.S. at 689. There is a strong presumption that counsel's conduct falls within the wide range of reasonably professional assistance. <u>Id</u>. To establish prejudice the defendant must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." <u>Strickland</u>, 466 U.S. at 694.

A reasonable probability is one "sufficient to undermine confidence in the outcome." <u>Id</u>. Thus, the defendant must show more than an error that could conceivably have some effect on the outcome of the proceeding. Because the defendant must prove both deficient representation and resulting prejudice, the court may address either or both prongs in determining the motion to vacate premised on such grounds. The court need not determine whether counsel's performance was deficient if such alleged deficiency could not have resulted in prejudice under the test.

**Factual Findings from Evidentiary Hearings**[2]

Philip Weidner represented Steven Landers in the instant case during the pretrial, trial and sentencing stages of the case. He has practiced law for 40 years and has a degree in electrical engineering from MIT, as well as, a law degree.

Prior to formal charges being brought against Steven Landers, Phillip Weidner wrote a lengthy letter to the U.S. Attorney's office arguing that the search in this case was invalid, unlawful and unconstitutional. His efforts at pre-charge negotiations failed to dissuade the U.S. Attorneys office from seeking an indictment.

After arraignment Mr. Weidner filed five suppression motions. The motions argued that Landers' residence was private property with a locked gate and a "no trespassing" sign. He challenged the entry of CEA onto the property. He raised an issue of the Chugach Electric personnel acting in conjunction with the Anchorage Police Department arguing they were basically de facto police agents. He raised an issue as to whether Chugach Electric exceeded their limited permission to go onto the property. He challenged the legal sufficiency of the State search warrants used by the police to seize evidence in this case. Mr. Weidner filed an omnibus memorandum of 43 pages to support his five suppression motions. These motions argued in part that the residence in question was private property posted

---

[2] The Transcript of Proceedings of the Evidentiary hearing from May 28, 2013 is filed at Docket 414. The Transcript of Proceedings of the Evidentiary hearing held on June 4, 2013 is filed at docket 425.

with no trespassing signs and that CEA and the Anchorage Police had exceeded their authority in allowing CEA to conduct a warrantless search.

Four of the suppression motions challenged derivative search warrants because they were predicated upon the first search warrant which the defendant challenged. Weidner argued that certain activities of the CEA personnel and Anchorage Police Department trespassed on and searched the private residence and the curtlidge at 8220 Clarks Road in Anchorage, Alaska, in the absence of a search warrant and in violation of the Fourth Amendment. Weidner argued that the CEA personnel acted unlawfully in conjunction with the Anchorage Police Department as essentially quasi or de facto agents of the Anchorage Police.

Mr. Weidner filed objections to the magistrate judge's Recommendation. He preserved Landers' positions by arguing his points to the district court and preserving then for appeal. Mr. Weidner disputed the Recommendation that CEA had permission to go onto the Clarks Road property.

Mr. Weidner wrote on Exhibit 23 (Exhibit A at the May 28, 2013 hearing) "diff" and "acct." which he interpreted to mean "different account." This is evidence that Mr. Weidner understood at the time that Exhibit 23 related to property of Landers other than the Clarks Road residence. Exhibit 23 is an application for membership in the CEA co-op; it is not a customer agreement.

During the suppression hearing Mr. Vroman was asked "Did Chugach Electric have a power agreement with Mr. Landers?" He answered, "Yes, we had a signed application for service. Yes." Transcript of Suppression Hearing, September 20, 2007, Docket 70 at p.11. Mr. Vroman clarified during his testimony on June 4, that in the context of the questioning at the suppression hearing he did not consider that question to relate to a specific address. Furthermore, Mr. Vroman explained that Chugach Electric did not need a power agreement for each specific piece of property as long as the consumer had previously signed an agreement to abide by the tariff.

Mr. Vroman's testimony supports the conclusion in the magistrate judge's Recommendation that Chugach Electric had a consumer agreement with Landers for power for 8220 Clarks Road. The Recommendation does not state that this agreement for receiving power at Clarks Road was in writing. Exhibit 23 was not received into evidence as a document to show that there was a service agreement at 8220 Clarks Road. Therefore, there was no error in Mr. Weidner not arguing more stringently that there was not a customer agreement for that particular address. Mr. Vroman was careful to answer the questions posed to him.

Exhibit 23 states, "I agree to comply with Chugach Electric Association Bylaws." It further states, "I agree to provide safe access to the premises to Chugach Employees." Mr. Weidner understood that there was an agreement for

Landers to receive power at 8220 Clarks Road and to pay for it in exchange. Docket 414, p. 60, lines 22-24. CEA had knowledge that Landers was receiving power at the property and Landers was paying the bill. Id.

At trial, Mr. Vroman was asked the following question: "So now, on this -- incidently, do you even have an actual written contract with Mr. Landers for that specific area?" Mr. Vroman answered Weidner's question, "No, we don't require it for each service location." Trial Transcript, Docket 250 at p.173. Landers argues that these two answers by Mr. Vroman are inconsistent. They are not inconsistent for the reasons Mr. Vroman explained in his testimony at the June 4, 2013 evidentiary hearing. The tariff provides that membership is a condition of receiving service by Chugach Electric. The application for service provides that the supply of service by Chugach and its acceptance by the member shall constitute an agreement and acceptance of chugach's policies, rules and regulations.

At the evidentiary hearing on the Motion to Vacate, Mr. Dewey asked Weidner: "Do you know if there was a consumer agreement, a signed consumer agreement, ever, for 8220 Clarks Roads?" Transcript Evidentiary Hearing, Docket 414, at p.19. This query was actually two questions not one. Whether there was a consumer agreement is a different question from whether there was a signed consumer agreement. Not surprisingly, Mr. Weidner answered: "I don't recall ever seeing a signed consumer agreement, no, with that address."

**DISCUSSION**

In his testimony at the suppression hearing Mr. Vroman identified Exhibit 23 as an application for membership agreement in Chugach Electric. He testified in essence that it applied to the property at 8220 Clarks Road. Mr. Vroman explained at the evidentiary hearing why this was so. He explained that once a consumer ceases receiving power from CEA the account goes dormant subject to reinstatement at a later time when electric power is received from Chugach by that same consumer.

At the § 2255 hearing Mr. Dewey asked Weidner to assume he could have shown that there was no customer agreement for the particular address (Clarks Road), would that have been important in applying United States v. Cleaveland, 38 F.3d 1092 (9th Cir. 1995). One of the factors taken into account in the Cleaveland case was the existence of a consumer agreement triggering the application of the Tariff. Weidner argued unsuccessfully that the fruits of this case against Landers met Cleaveland and thus required suppression. Mr. Weidner agreed that if he had noticed that there was no written customer agreement for 8220 Clarks Road he should have argued that to the district court. As shown by Mr. Vroman's testimony there was no need for a signed/written customer agreement for that particular piece of property.

The issue in <u>Cleaveland</u>, was whether or not the electric company had permission to go onto the property. <u>Cleaveland</u> did not limit how that permission was granted or documented. Mr. Weidner's testimony that in hindsight he should have "pushed" the issue more is of no import since Mr. Dewey's questions and Vroman's answers clearly demonstrate that Landers' right to a fair trial was not prejudiced in the limitations of Weidner's cross-examination or advocacy with respect to the issues at hand.

Landers argues that the issue whether there existed a valid customer agreement within the context of <u>Cleaveland</u>, was not raised by Mr. Weidner. However, `Landers' attorney Jerald Brainin in his Appellant Brief, argued that <u>Cleaveland</u>, "a case the district court heavily relied on in denying Landers' suppression motions," was inapposite. He characterized the magistrate judge's attempt to reconcile the instant case with <u>Cleaveland</u> as "misguided." *See* Appellant's Opening Brief, 2009 WL 3223765 (9th Cir. pp.14-15). This argument was rejected by the Ninth Circuit.

At trial Mr. Vroman was asked the question, "Do you even have an actual written contract with Mr. Landers for that specific area," and the answer was, "No, we don't require it for each service location." It was not error for Mr. Weidner not to have asked specifically whether Chugach required a current customer

agreement or written application to be able to enforce the Tariff under the existing facts of this case.

Weidner argued unsuccessfully that the facts of the Landers case met the Cleaveland case and that there was enough involvement by Mr. Vroman with the officers to rise to the level of an unconstitutional trespass. Mr. Weidner also took the position that whatever agreement CEA had with Mr. Landers it only allowed them to go to the meter and not beyond. The record shows that Mr. Weidner did argue that the Chugach Electric people had no authority to be where they were without a warrant, and that the police officers were probably facilitating a trespass. Weidner argued that even if CEA had a limited right to go to the meter, the nature of their oral agreement with Landers meant they were only supposed to go to the gate and then go with Landers to the meter.

The defense failed to show that CEA had no legal authority to be where they were at the time on Landers property. Mr. Vroman as manager for CEA exercised his lawful authority to enter the Clarks Road property. Mr. Vroman's testimony has not been shown to be perjured.

The record supports the factual conclusion that Chugach Electric Association knew that Landers was using power at 8220 Clarks Road, that he had an agreement with the power company to give them access to his property to read the meter, and CEA had the right to enter the property when they did. Mr. Weidner's

conduct clearly met the requirements of <u>Strickland</u> in his overall handling of Landers' criminal case. The record establishes that the court was not misled regarding Exhibits 22 and 23 or Mr. Vroman's testimony.

During the suppression hearing Mr. Weidner objected that there had not been a showing that Exhibit 22 was actually a part of any actual contract with Mr. Landers or that it was shown to him. He brought to the court's attention that Exhibit 23 made no reference to the Clarks Road address. Mr. Vroman clarified that a CEA consumer is not given a copy of the 100 page Tariff but it is available on line for review. It is undisputed that Landers had signed a document agreeing to be bound by the Tariff. It was unnecessary at the suppression hearing that the government provide proof that Landers had actually read or understood the document. The document establishes that he paid a non-refundable membership fee of $5.00 and became a member of the Co-op, subject to its Tariff. Exhibit 23 was offered and admitted to establish that Mr. Landers was a member of CEA Co-Op and by making that application agreed to be bound by the Bylaws and Tariff.

Mr. Vroman testified at the suppression hearing that prior to September 22, 2006, Landers showed up at 8220 Clarks Road and exhibited characteristics of a person entitled to possession of the property. Docket 70, p.31-34. Mr. Vroman's testified that CEA employees had had "several" contacts with Mr. Landers about the

property. Docket 70, p.109.  Mr. Landers had previously provided access to CEA employees producing a key from his possession.  Docket 70, p.110.

Prior to the criminal trial and without the need for litigation  Mr. Weidner assisted Landers in settling the power company's dispute about whether Landers was stealing power.  Mr. Landers paid a settlement to CEA for the power received at that property.  Docket 70, P. 119-120.  At trial Weidner sought and obtained a protective order to keep testimony that Landers did not have authority to take power from CEA at 8220 Clarks Road so the jury would not think that he was stealing power.  Testimony of Weidner, Transcript Evidentiary Hearing, Docket 414, at p.61. Since Weidner had a degree in electrical engineering from MIT he was quite capable of understanding the circuitry of the meter and explaining to the jury why it was not power theft although this arguably would have been a distraction to the jury.  The protective order was sought to keep those allegations away from the jury because they might have been prejudicial.

There is no evidence that the police officers provided more than a civil stand-by to Mr. Vroman.  There is no evidence of an attempt by anyone to mislead or deceive the government, the court or the fact-finder.  Vroman testified that at no time did AUSA Fuller tell him how he was suppose to answer any question.

Mr. Weidner stated in his opening statement at trial that Mr. Landers was an owner of the property at 8220 Clarks Road.  Docket 250, p.121-122.

Establishing or accepting the fact that Mr. Landers was a customer of CEA at 8220 Clarks Road was a fact pertinent to Mr. Weidner's position to avoid at trial any evidence of power theft.   Mr. Weidner adequately examined Mr. Vroman at the evidentiary hearing and trial concerning CEA's authority to go onto the Clarks Road property. It would have been futile for Weidner at trial to renew his motions to suppress based on an argument that there was no "active service agreement" for the Clarks Road address.   As Vroman explained a stand alone service agreement that was not the basis or a prerequisite for his entry onto the property.

Landers argues that his attorney should have cross-examined Vroman regarding whether the Bylaws of Chugach Electric Company allowed one to make an agreement 17 years before and then remain as a member of the co-op allowing CEA to enter any piece of property where that consumer might receive electrical power from CEA.  However, this was not  the position of CEA, Mr. Vroman, or the premise of the prosecution.  Neither the government nor CEA took the position that a consumer once a member of the Chugach Co-Op would continue to be a voting member or bound by the conditions in the Tariff if he no longer purchased electric power from CEA.

Jeffrey Vroman was manager at Chugach Electric.   As such he supervised the areas of billing, field support, meter reading and revenue assurance. He had access to applications for service filled out by customers.   He also had

access to new installation requests, customer consumption history, and transformer information.  He testified that once CEA activates an account, the customer begins receiving a monthly electric bill.  In Order to receive electric power the consumer must be a member of the Co-Op.  If you are no longer a consumer of electricity through Chugach Electric then you are not an active member until you are reinstated in the future.  Transcript Limited Evidentiary Hearing, Docket 425 at p.8.  However, the consumer did not necessarily need to fill out a new application for the new address.  If you have an application for electrical service from CEA on file that will entitle you to future service at other addresses.  Transcript, Docket 425, pp. 60, 75.

Around 2003 or 2004 Chugach Electric converted all of their paper applications and records to digital records.  The initial application for service by Mr. Landers is dated August 1988.  This was for an address at 14800 Zircon Circle or Court, No. 2, in Anchorage.  There is no evidence of a conspiracy by the government to move into evidence the Zircon Circle document and pass it off as an agreement for 8220 Clarks Road.

Mr. Vroman explained that CEA does not have an application for service on every account that a person has.  Some folks, for example, have hundreds of accounts with CEA and they do not have an application for service specific to each address.  Transcript Limited Evidentiary Hearing, Docket 425 at p.25.  He explained that a customer agreement is a generic document which is not needed for each

location.  Exhibit 3 at the Suppression Hearing was offered by the government to prove dates of service by Mr. Landers at 8220 Clarks Road, not whether he had an agreement for the provision of power at any particular place.  Vroman explained that a remote reading of Landers' meter at 8220 Clarks Road was not viable from the location of the gate to the property and thus access to the property was necessary for meter reading.

According to Mr. Vroman, Landers has had at least four accounts in the past with Chugach.  Vroman explained why his answer to the one question at the suppression hearing was "yes", but he answered "no" to a question identified by Landers.  He said it was because the questions were not the same.  Vroman never testified at the Suppression Hearing or trial about any interruptions of service to Landers receiving electrical power from Chugach Electric.

Landers argues that his trial attorney failed to explore in the suppression motions "an erroneous finding by the court that Chugach Electric (CEA) had an written application for services for the property searched which in turn triggered the terms of a tariff and allowed the original entry on to the land at 8220 Clarks Road in Anchorage, Alaska, on September 22, 2006." Docket 426, p.2. Landers argues that if Mr. Weidner had brought out the fact that when CEA entered the defendant's land there was no written consumer agreement for 8220 Clarks Road, then the court would have found CEA officials to be agents of the government.  Docket 426, p.7.

The Recommendation regarding motions to suppress, Docket 84 states in relevant part: "In September 2006, Chugach Electric provided power to 8220 Clarks Road. Chugach had a consumer agreement for power with Steve Landers for that address." *Id.* at p.4. This statement does not state that Steve Landers had a written agreement for power for the Clarks Road address. Indeed, no written consumer agreement for that particular property was needed for Chugach Electric to enter the defendant's property.

At the suppression hearing Chugach Electric manager Jeffrey Vroman, was asked by AUSA Fuller the following question: "Mr. Vroman, did Chugach Electric have a power agreement with Mr. Landers? "Answer": Yes, we had a signed application for service, yes." Transcript, Docket 70, p.11. Mr. Vroman has consistently testified that Chugach Electric had a signed application for membership in the CEA Co-op. *See* Government's Exhibit 23 at the Suppression Hearing (Government's Exhibit 2 at the § 2255 evidentiary hearing held June 4, 2013). This application was submitted by Steve Landers in 1988 using the mailing address of 14800 Zircon Circle, Anchorage, 99516. Mr. Vroman testified at the latter hearing that a member of the co-op who ceases to be a consumer of electricity through Chugach Electric can be reinstated without having to fill out a new application for the new address. Transcript, Docket 425, p.8.

The application for membership contains a statement that the applicant agrees to comply with Chugach Electric's Bylaws, as amended, and its regulations and tariffs. Section 5.9 of the Tariff provided access to Chugach Electric to service their equipment on the property. Transcript, Docket 70, p.15.

In a latter hearing Mr. Vroman explained that when he answered the question about whether Chugach Electric had a power agreement with Mr. Landers he understood the context of the questioning at the suppression hearing to be generic and not related to the Clarks Road address.

See Transcript, Docket 425 at pages 22, 24, 32, 58

("No" in regard to whether there is an agreement specifically with that information on Clarks Road on it),

Page 59

("I was never asked if there was one specific to Clarks Road")

Page 60

("There's not an application for service with the Clarks Road address on it. Does Mr. Landers have a contract with Chugach does he have an application for electric service on file? He does. It's not specific to Clarks Road, it's for this address on Zircon and will entitle him to future service at other addresses.")

Page 69

(When someone is first joining the co-op, they're required to fill out an application for service.   Application will apply to all other properties where they later obtain service),

Page 71

(Not a requirement that when a customer adds new accounts he must fill out another membership application).

Mr. Vroman further stated that as he testified at the suppression hearing the tariff and the membership application constitute an agreement for service between Chugach and Landers at the Clarks Road property where he was a consumer.  Transcript, Docket 425, p.73.  Prior to the entry onto the Clarks Road property Mr. Vroman had had conversations with Landers at that location on the topic of access issues.  *Id.* at 73-74.  Landers had had up to four accounts in the past with Chugach.  Transcript, Docket 425 at 54.

The challenged statement in the Recommendation (Chugach Electric had a consumer agreement for power with Steven Landers for 8220 Clarks Road) was consistent with Mr. Vroman's answer at Page 11 of the Suppression Transcript, Docket 70, in the context in which he gave his answer.  Vroman said "yes" to the question about whether Chugach Electric had a power agreement with Mr. Landers, but he  modified AUSA Fuller's question by stating in his answer that Chugach Electric had "a signed application for service."   The evidence and the

Recommendation are clear that Steven Landers had an agreement with Chugach to receive electric power at 8220 Clarks Road. The agreement was based upon his membership in the co-op, the implied reactivation of service (based upon Landers' previous conversations with Vroman about access to power at that address and the bills for service going to Landers at Clarks Road), the application binding Landers to the CEA tariff, and the Clarks property receiving electric power from Chugach Electric. Landers was clearly a consumer receiving electric power from Chugach Electric at the Clarks Road address. However, there was no "consumer agreement" in written form. No written consumer agreement was required and a customer could reactivate his account by a telephone call or orally over the counter.

At the suppression hearing Vroman was asked the following question: "And when Chugach provides power to a location, is there some type of a power agreement, or a contract that you enter into with a consumer?" Vroman's answer did not adopt either part of that question, namely the existence of a power agreement or a contract per se. Rather, he explained that the Co-Op had an application for service and when someone joins the Co-Op they join as a member owner. Transcript, Docket 70, p.9.

It was clear from the evidence at the suppression hearing that Landers' application for service (Exhibit 23) was for Zircon Court, not Clarks Road. It was clear that the application for service was signed in 1988 and not 2006. The court

was not misled by the evidence that at the time Vroman entered the Clarks Road address Landers was an active member of the cooperative and that he was bound by the Tariff. Vroman's trial testimony is not inconsistent with his testimony at the suppression hearing. The evidence allowed at the § 2255 hearing does not support Landers' argument that the court's rulings on the suppression motions are not supported by the record.

The Recommendation arguably was misleading to the extent that it suggests that the Court's decision was based upon a single document or written agreement. It was not. It was not ineffective for Mr. Weidner not to specifically challenge this statement because the basic finding of the Court was that Chugach employees had the right to go on the property under the tariff and they were not assisted unlawfully by the police. Weidner did challenge this holding. Vroman called for a civil standby by the police after he had gone to the property, observed the no trespassing sign and was unable to read the meter without going on the property. Weidner argued unsuccessfully that Vroman trespassed on Landers' property without proper authority. The evidence indicates that Vroman was independently motivated to investigate the possible power theft at the Clarks Road residence. That his actions benefitted the police does not mean that his entry was intended to assist law enforcement efforts.

Mr. Weidner clearly understood that the prosecutor considered Landers as the consumer responsible for electric power being furnished to the Clarks Road address by CEA. He objected to numerous factual findings and legal conclusions to the Recommendation addressing his motions to suppress, although not that specific sentence in the Recommendation. The application of the tariff was not based upon a "convoluted theory" as characterized by Landers. The tariff applied once Landers became a member of the CEA Co-Op and re-activated his membership for the Clarks Road address.

Landers continues to dispute this court's determination that employees of CEA did not act as "agents" of the government in conducting their warrantless search of 8220 Clarks Road, but acted independently of the Anchorage Police. The motion to vacate is not the time or place to reargue that judicial determination. That issue was discussed at length in the Recommendation regarding the defendant's suppression motions and the magistrate judge finds it unnecessary here to repeat that discussion. Landers states that the issue of agency was a "close question" at the time of the original hearing. Memorandum, Docket 426, p.4. Regardless, Mr. Vroman's testimony at the suppression hearing was not evidence of an alliance of the CEA and the police "rising to the level of agency relationship."

Had the district court conducted a Franks hearing as suggested by Landers, Vroman would have clarified his testimony then rather than waiting until he

testified at the § 2255 Evidentiary Hearing. The district court would have made the same decision on the agency question had the testimony been so clarified. In the direct appeal in this case the Ninth Circuit ruled that the district court did not err in denying Landers a <u>Franks</u> hearing. *See* <u>United States v. Landers</u>, 2009 WL 2952162 (9th Cir.) citing <u>Cleaveland</u>, <u>supra</u>. The Ninth Circuit ruled that the district court had not erred in finding the power company's inspection did not implicate Landers' Fourth Amendment rights because he did not meet his burden to show government action.

Landers offers the following colloquy between Mr. Dewey, (his attorney at the § 2255 evidentiary hearing) and Weidner (his trial counsel) as evidence of Mr. Weidner's ineffective of counsel:

Question: So if they didn't have permission and they knew that they didn't have permission from looking at his file at the time of the search warrant, you'd want to show that to the judge; right?

Answer: Well here's the situation, counsel. It looks like they kinda implicitly claimed at the suppression hearing, and then they claimed at trial, that they don't have to have a specific membership application for a specific address and they still can maintain that the consumer is bound to

the tariff that they've never seen. If I would have known at the evidentiary hearing, the suppression hearing, that Vroman didn't even know whether or not Mr. Landers had a membership application on file, I would have pursued that because I think it would have helped demonstrate to the court that, frankly, Mr. Vroman was trying to tailor his testimony to join forces with the police officers to uphold the search.

Transcript, Docket 414 at pp. 45-46.

Vroman produced the 1988 Membership Application from the CEA files. Mr. Weidner testified that he had not reviewed the file before testifying at the evidentiary hearing. First, at the suppression hearing Vroman identified the signed application for service. Docket 70, p. 11. Mr. Vroman testified that they (CEA) did not need a specific membership application for a specific (each) address in order for the consumer to be bound to the tariff. Thus, the hypothetical question has no factual basis. Nor did the manner in which Chugach Electric conducted its business, namely using a membership application to bind a member to complying with the association bylaws, regulations and tariffs demonstrate that Vroman had joined forces with the police to conduct a search. Had Mr. Weidner explored more fully on cross-examination the use of a customer agreement or application for membership

with respect to a specific piece of property namely, the Clarks Road address, he likely would have elicited the same answers and explanation given by Vroman at the trial and at the § 2255 evidentiary hearing.

Landers complains that Vroman did not explain at the suppression hearing that the initial membership application could be used to allow the application of the tariff even though that agreement was 17 years old for another address. The membership application which was admitted into evidence at the suppression hearing bears the signature of Landers and contains a statement that the prospective member "agrees to provide safe access to the premises to Chugach employees and to promptly pay all Chugach bills which are due." The document also states that "it is mutually agreed that acceptance of this application constitutes a contract which will continue until termination by 30 days written notice."

The evidence at the suppression hearing did not address any notice for termination by Landers. The issue is whether Mr. Weidner rendered ineffective assistance of counsel by not bringing to light more clearly the process by which Chugach binds its customers for electric service to provide access to the premises where their equipment is located. Landers has not shown any prejudice resulting from the lack of such extended cross-examination by his trial attorney.

At the suppression hearing the court told the government to "get to the specifics" in their questioning of Vroman. The court did not direct Vroman to be

more specific but rather the attorney to be more specific in his questioning of the witness.  This admonishment did not preclude Vroman from answering only the question(s) put to him.   Vroman testified that once a member signs  an application for services it applies to all locations for that customer.  Landers argues that "this is simply wrong."  Docket 426, p.17.  Landers may not agree with the way Chugach Electric conducts business, but they have failed to show that it is an illegal process.

Landers faults Vroman for not producing sufficient backup material to support his interpretation of the practice of the utility company.  Vroman did not testify that Landers customer agreement allowed CEA to enter any private property Landers may have in the future in the absence of Landers as a past member of the Co-Op re-activating his membership and receiving electricity from CEA for the new piece of property.

Landers misstates the finding in the Recommendation which states: "Chugach had a consumer agreement for power with Steve Landers for that address."  Landers misstates the finding as " . . . the customer application in this case was specific for 8220 Clarks Road."  Docket 426, p. 20.  The Recommendation does not say that the customer application was for the Clarks Road address.  The jest of the statement in the Recommendation is that Landers had an agreement with Chugach to receive electrical power at that address.  Because Landers was a consumer, the Recommendation termed it "A consumer agreement for power."  This

is not an incorrect statement although arguably misleading in its phraseology if the statement is considered alone. Because Landers knowingly received electric power at 8220 Clarks Road, and in September 2006 he was considered by Chugach Electric to be member of the Co-Op he was still bound by the language of the membership application which provided CEA with access to the property serviced with electricity from Chugach.

In his initial motion to vacate Landers argues that he was improperly sentenced based on the number of marijuana plants, not the actual quantity of marijuana. Paragraph 44 of the Presentence Report describes how the base offense level under th U.S. Sentencing Commission Guidelines was calculated with reference to the amount of marijuana involved. That computation in relevant part states:

> 44. **Base Offense Level**: The U.S. Sentencing Commission guideline for a violation of 21 U.S.C. § 841(a)(1) is found in U.S.S.G. §2D1.1. The offense level is specified in the Drug Quantity Table (U.S.S.G. § 2D1.1) and is based upon the amount of controlled substance involved in the offense of conviction, as well as any relevant conduct. Relevant conduct means all acts of the defendant that were part of the same course of conduct or common scheme or plan as the offense of conviction. U.S.S.G. § 1B1.3. In the case of an offense involving marijuana plants, each plant is treated, regardless of sex, as equivalent to 100 grams of marijuana. Provided, however, that if the actual weight of the marijuana is greater, use the actual weight of the marijuana. U.S.S.G. 2D1.1, Notes to Drug Quantity Table. The defendant is responsible for 183 marijuana plants.5 Using the

> conversion of one plant as equivalent to 100 grams of marijuana, the converted amount of marijuana for which the defendant is responsible for is 18.3 kilograms. This amount is greater than the actual weight of the marijuana, as reported by the DEA laboratory, and will, therefore, be used for the guideline calculation. If the offense involved at least ten kilograms but less than 20 kilograms marijuana, the offense level is 16. U.S.S.G. § 2D1.1(c)(12).

Landers has not shown how this computation was in error.

## Conclusion

Mr. Weidner did a thorough job in his representation of Landers including his attack against the search warrants and challenge to Chugach's entry onto Landers' property. Landers has failed to show that his attorney's representation amounted to ineffective assistance of counsel or that he was derelict in his representation of Landers as to the suppression issues.

Landers reverts to arguing that Vroman was not credible which was an issue for the fact-finder and beyond the present issue of ineffective assistance of counsel. Landers has failed to demonstrate through evidence that Vroman perjured himself in his responses to questions during his testimony. The record contains no evidence that Mr. Vroman or CEA conspired with Mr. Fuller or any government agent to conceal the true facts from the court or the jury. The allegations of the ineffective assistance of counsel are unsupported and therefore should be denied. Landers' remaining argument should be denied for lack of proof and lack of prejudice.

Accordingly, the Motion to Vacate lacks merit and should be DENIED.

IT IS SO RECOMMENDED.

DATED this 10th day of July, 2013, at Anchorage, Alaska.


 /s/ John D. Roberts
JOHN D. ROBERTS
United States Magistrate Judge

Pursuant to D.Ak.L.M.R. 6(a), a party seeking to object to this proposed finding and recommendation shall file written objections with the Clerk of Court no later than **CLOSE OF BUSINESS, 7/24/2013.** Response(s) to the objections shall be filed on or before **CLOSE OF BUSINESS, 7/31/2013.**

Failure to object to a magistrate judge's findings of fact may be treated as a procedural default and waiver of the right to contest those findings on appeal. The Ninth Circuit concludes that a district court is not required to consider evidence introduced for the first time in a party's objection to a magistrate judge's recommendation.

Objections and responses shall not exceed **five (5) pages** in length, and shall not merely reargue positions presented in motion papers. Rather, objections and responses shall specifically designate the findings or

recommendations objected to, the basis of the objection, and the points and authorities in support.